FARHAD NOVIAN (SBN 118129)
farhad@novianlaw.com
ANTHONY S. CHAVEZ (SBN 288089)
anthonyc@novianlaw.com
ALEXANDER BRENDON GURA (SBN 305096)
gura@novianlaw.com
**NOVIAN & NOVIAN, LLP**
1801 Century Park East, Suite 1201
Los Angeles, CA 90067
Telephone:   (310) 553-1222
Facsimile:   (310) 553-0222

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN KANG, an individual, on behalf of himself and SKYBLOCK, LLC and MID-WILSHIRE CONSULTING, LLC; PRASAD HURRA, an individual; DAVID KIM, an individual, on behalf of himself and BLUE ROCK GROUP; ARTEMIO VERDUZO, an individual; DAVID KWON, an individual; and YOUNG JAE KWON, an individual,<br><br>Plaintiffs,<br><br>v.<br><br>HYBRID TRADE LIMITED, an unknown business entity; ASIA DIGITAL ASSET EXCHANGE, an unknown business entity; ALLYSIAN SCIENCES, an unknown business entity; APOLO OHNO, an individual; ROD JAO, an individual; EUGENIO PUGLIESE, an individual; HENRY LIU, an individual, and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  2:21-cv-06593-MCS-JPR<br><br>Judge:    Hon. Mark C. Scarsi<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO RECONSIDER ORDER GRANTING DEFENDANT APOLO OHNO'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**<br><br>Hearing Date:   April 11, 2022<br>Time:           9:00 a.m.<br>Courtroom:      7C<br><br>Complaint Filed: Aug. 13, 2021 |

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on April 11, 2022 at 9:00 a.m. or as soon thereafter as the matter may be heard in the courtroom of the Honorable Mark C. Scarsi, United States District Judge, located at the First Street Courthouse, 360 West 1st Street, Courtroom 7C, 7th Floor, Los Angeles, California 90012, Plaintiffs Brian Kang, on behalf of himself, SkyBlock, LLC, and Mid-Wilshire Consulting, LLC ("Kang"), Prasad Hurra ("Hurra"), David Kim, on behalf of himself and Blue Rock Group ("Kim"), Artemio Verduzo ("Verduzo"), David Kwon ("Kwon"), and Young Jae Kwown ("Jae Kwon" and, collectively, "Plaintiffs") will and hereby do move for reconsideration of the Court's February 15, 2022 Order Granting Defendant's Motion to Dismiss. As described below and herein, the Court's dismissal of Plaintiffs' claims on purely procedural grounds not only rests on faulty and inconsistent logic and misapplication of applicable law, but also deprives Plaintiffs of any recourse for Defendants' fraudulent conduct. In light of and to rectify this severe miscarriage of justice, the Court's February 15, 2022 Order Granting Defendant's Motion to Dismiss should be reconsidered.

This motion is made pursuant to Local Rule 7-18 and Federal Rules of Civil Procedure 59 and 60 and premised upon the Court's internally inconsistent analysis of the applicable statutes of limitations and dismissal of Plaintiffs' state-law claims with prejudice. (*See, e.g.*, ECF No. 33, at 4:20-26 ("accepting Plaintiffs' arguments" "that they could not have discovered the [securities law] claim until the SEC Framework for cryptocurrency stated cryptocurrencies were securities in April 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(1)); *id.* at 5:19-20 (stating that "the latest possible date for discovery of these violations [of the securities laws] is March 9, 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(2)); *id.* at 6:12-13 ("[a]ccepting the completed sale argument" for purposes of evaluating statute of limitations for claim of securities fraud); *see also* ECF No. 34, at 2:6 ("This action is dismissed with prejudice.").)

This motion is based on the accompanying memorandum of points and authorities, the papers on file in this action, and such other matters as may come before the Court at the hearing on this matter.

DATED:  February 28, 2022              NOVIAN & NOVIAN LLP

                                       By: */s/ Alexander Brendon Gura*
                                             FARHAD NOVIAN
                                             ANTHONY S. CHAVEZ
                                             ALEXANDER BRENDON GURA

                                             *Attorneys for Plaintiffs*

## **TABLE OF CONTENTS**

I. STATEMENT OF FACTS ................................................................................. 1

II. STANDARD OF REVIEW ................................................................................ 4

III. ARGUMENT ...................................................................................................... 5

    A. Plaintiffs' Section 10(b) Claim Is Timely. .......................................... 5

    B. It Was an Abuse of Discretion to Dismiss Plaintiffs' Timely State Law Claims with Prejudice. ................................................................ 9

IV. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

Cases

*Carnegie- Mellon Univ. v. Cohill*
    484 U.S. 343 (1988) ................................................................................. 9

*City of Oakland v. Oakland Raiders*
    445 F.Supp.3d 587 (N.D. Cal. 2020) ........................................................ 9

*Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*
    884 F.2d 504 (9th Cir. 1989) .................................................................... 9

*Lubin v. Sybedon Corp.*
    688 F. Supp. 1425 (S.D. Cal. 1988) .......................................................... 7

*Merck & Co. v. Reynolds*
    559 U.S. 633 (2010) ................................................................................. 8

*Moss v. Tiburon Minerals Ltd.*
    07-2732, 2008 WL 686833 (N.D. Cal. Mar. 11, 2008) ............................. 5

*Rupert v. Bond*
    12–cv–05292, 2015 WL 78739 (N.D. Cal. Jan 6, 2015) ........................... 5

*Turner v. Burlington N. Santa Fe. R. Co.*
    338 F.3d 1058 .......................................................................................... 4

*Warner Bros Int'l Television Distrib. v. Golden Channels & Co.*
    CV 02-9326, 2004 WL 7336853 (C.D. Cal. Nov. 17, 2004) .................... 5

Federal Rules

Fed. R. Civ. P. 59(e) ......................................................................................... 4

Fed. R. Civ. P. 60(b)(6) .................................................................................... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs Brian Kang, on behalf of himself, SkyBlock, LLC, and Mid-Wilshire Consulting, LLC ("Kang"), Prasad Hurra ("Hurra"), David Kim, on behalf of himself and Blue Rock Group ("Kim"), Artemio Verduzo ("Verduzo"), David Kwon ("Kwon"), and Young Jae Kwown ("Jae Kwon" and, collectively, "Plaintiffs") submit this memorandum of points and authorities in support of their request for reconsideration of the Court's February 15, 2022 Order Granting Defendant's Motion to Dismiss (the "Order"). As described below, the Order is premised upon a manifest failure to consider material facts presented to the Court, resulting in an internally inconsistent analysis of the applicable statutes of limitations and thereby justifying relief. (*See, e.g.*, ECF No. 33, at 4:20-26 ("accepting Plaintiffs' arguments" "that they could not have discovered the [securities law] claim until the SEC Framework for cryptocurrency stated cryptocurrencies were securities in April 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(1)); *id.* at 5:19-20 (stating that "the latest possible date for discovery of these violations [of the securities laws] is March 9, 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(2)); *id.* at 6:12-13 ("[a]ccepting the completed sale argument" for purposes of evaluating statute of limitations for claim of securities fraud).) In addition, the Order improperly dismisses Plaintiffs' state law claims with prejudice on the sole basis that the Court refuses to retain subject matter jurisdiction.

## I.  STATEMENT OF FACTS

As alleged in the Complaint, Defendants Apolo Ohno ("Ohno") and Rod Jao ("Jao") founded Hybrid Trade Limited ("Hybrid") and announced in a series of white papers (the "White Papers") their grand aspirations to "build[] an ecosystem that seeks to bring 100 million new people into the blockchain network over the next three years." (ECF No. 1, ¶ 42.) To fund the development of this ecosystem, the White Papers revealed that Ohno and Jao, through Hybrid, would offer and sell a cryptocurrency known as the "Hybrid Token." (*Id.*, ¶¶ 8, 57.)

Ohno, Jao, and others associated with Hybrid personally solicited outside investment in Hybrid, including from Plaintiffs and other United States-based investors, via meetings, interviews, and appearances. Indeed, on October 12, 2017, Ohno met and dined with several United States based investors, including Plaintiffs Brian Kang and David Kwon, Ian Balina, Jeff Dubinsky, Ryan Lee, Liam Murphy, Ugo Nduguba, Herman Seo, and Hen Tekle at a restaurant named Park's BBQ located within this District at 955 S. Vermont Ave, Ste. G, Los Angeles, California 90006 (the "Dinner Meeting"). (*Id.*, ¶ 94.) The Dinner Meeting was intended to be, and, in fact, was a means of recruiting employees and soliciting investments. Indeed, following the Dinner Meeting, (i) Dubinski was named a Vice President of Hybrid, (ii) Tekle became an advisor to and investor in Hybrid, (iii) and Kwon became an investor in Hybrid. (*Id.*, ¶ 95.) Shortly thereafter, Ohno was a keynote speaker at the Spring 2018 "Crypto Invest Summit West" at "LA Blockchain Week" in Los Angeles, California, where Ohno was introduced as representing Hybrid and reiterated many of the White Papers' representations regarding the Hybrid ecosystem.[1]

Between approximately January 2018 and June 6, 2018, Defendants solicited and raised approximately $50 million from investors based around the world, including within the United States. (ECF No. 1, ¶ 1.) In reliance on the representations by Hybrid, Ohno, Jao, and others affiliated with Hybrid, and with the knowledge and consent of Hybrid, Ohno, Jao, and others affiliated with Hybrid, Kang led a consortium of investors who ultimately invested approximately $1.93 million USD. (*Id.*, ¶¶ 10-15.)

Thereafter, Hybrid purchased a so-called white-label exchange, or pre-fabricated exchange, from third party AlphaPoint and hurriedly released the same as www.hybex.net ("Hybex Net") and, ultimately, www.hybex.io in full ("Hybex IO").

---

[1] *Fireside Chat with Apolo Ohno / Hybridblock*, LA Blockchain Summit, YouTube (May 14, 2018), https://www.youtube.com/watch?v=khp3mRgnWfc.

(ECF No. 1, ¶¶ 57, 108-110.)  Hybex IO was virtually indistinguishable from Hybex Net.  (*Id.*, ¶ 109.)

Thereafter, on August 7-8, 2018, Hybrid's electronic wallets were purportedly breached and approximately 11,000 ETH in cryptocurrency, worth approximately $4,400,000.00 at the time, was stolen (the "Breach").  (ECF No. 1, ¶ 100.)

On March 9, 2019, CipherBlade Ltd. ("CipherBlade"), an electronic asset security firm engaged to investigate the Breach at Kang's insistence, published a report entitled Blockchain Analysis of HybridBlock Breached Funds (the "CipherBlade Report").  (ECF No. 1, ¶ 103.)  The CipherBlade Report revealed, among other things, that Hybrid: (i) failed to conduct appropriate General Data Protection Regulation ("GDPR") actions in response to the Breach, in violation of security best practices; (ii) failed to notify investors and/or law enforcement of the Breach, in violation of security best practices (and in breach of its fiduciary and other legal duties); and (iii) stored approximately $20,000,000 of investor funds in TUSD, on a wallet on a computer, in violation of the White Papers' claims regarding the use of multiple wallets and in violation of security best practices.[2]  (ECF No. 23-2, Ex. C.)

On April 3, 2019, the SEC released a detailed Framework to analyze digital assets under the *Howey* test (the "SEC Framework").  (ECF No. 1, ¶ 64.)

In or about May 2019, Asia Digital Asset Exchange ("ADAX") acquired Hybrid.  (ECF No. 1, ¶ 17.)

Thereafter, Ohno, Jao, and others began to deactivate, disable, and otherwise remove from various websites, forums, chat rooms, and social media accounts any and all evidence of Hybrid, Defendants' involvement in Hybrid, and the offer and sale of Hybrid Tokens.  (ECF No. 1, ¶ 17.)

---

[2] Ohno does not dispute the issuance of the CipherBlade Report or the fact that the CipherBlade makes numerous assertions regarding potentially unlawful conduct by Hybrid and another.  (*See* ECF No. 23-1, at 5:23-7:9.)

Promptly upon becoming aware of the existence of their causes of action, on May 1, 2020, Plaintiffs, Ohno, and others entered into a Confidential Claims Tolling Agreement (the "Tolling Agreement"). Pursuant to the Tolling Agreement, the Parties agreed to toll the statute of limitations for any claims they may have against one another for the for the period beginning May 1, 2020 and ending December 31, 2020. (Declaration of Alexander Brendon Gura in Support of Plaintiffs' Opposition to Defendant Apolo Ohno's Motion to Dismiss Plaintiffs' Complaint ("Gura Decl."), ¶ 2 & Ex. A.)

On February 15, 2022, the Court issued the Order. In the Order, the Court found at least three (3) different dates on which the statute of limitations could have begun for purposes of Plaintiffs' causes of action under the federal securities laws, and applied a *different* date for *each* cause of action under the federal securities laws. (*See, e.g.*, ECF No. 33, at 4:20-26 ("accepting Plaintiffs' arguments" "that they could not have discovered the [securities law] claim until the SEC Framework for cryptocurrency stated cryptocurrencies were securities in April 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(1)); *id.* at 5:19-20 (stating that "the latest possible date for discovery of these violations [of the securities laws] is March 9, 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(2)); *id.* at 6:12-13 ("[a]ccepting the completed sale argument" for purposes of evaluating statute of limitations for claim of securities fraud).).

## II. **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 59(e) permits a party to file "[a] motion to alter or amend a judgment" within "28 after the entry of the judgment. (Fed. R. Civ. P. 59(e).) The Court has considerable discretion when considering a motion to amend a judgment under Rule 59(e). *See Turner v. Burlington N. Santa Fe. R. Co.*, 338 F.3d 1058, 1063. There are four grounds upon which a Rule 59(e) motion may be granted: (1) the motion is "necessary to correct manifest errors of law or fact upon which the


4
PLAINTIFFS' MOTION TO RECONSIDER

judgment is based;" (2) the moving party presents "newly discovered or previously unavailable evidence;" (3) the motion is necessary to "prevent manifest injustice;" or (4) there is an "intervening change in controlling law." *Ibid.* A manifest error is an "error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." *Moss v. Tiburon Minerals Ltd.*, 07-2732, 2008 WL 686833 (N.D. Cal. Mar. 11, 2008); *see also Rupert v. Bond*, 12–cv–05292, 2015 WL 78739, *2 (N.D. Cal. Jan 6, 2015) ("A manifest error of law is not *merely* one in which the party disagrees with the Court, but instead is the "wholesale disregard, misapplication, or failure to recognize controlling precedent on the part of the court."). A motion under Rule 59(e) motion "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Warner Bros Int'l Television Distrib. v. Golden Channels & Co.*, CV 02-9326, 2004 WL 7336853, *2 (C.D. Cal. Nov. 17, 2004).

Federal Rule of Civil Procedure 60 permits "the court [to] relieve a party or its legal representative from a final judgment, order, or proceeding" for, *inter alia*, "any other reason that justifies relief." (Fed. R. Civ. P. 60(b)(6).)

Local Rule 7-18 states, in pertinent part, that "[a] motion for reconsideration of an Order on any motion or application may be made only on the grounds of . . . (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered." (L.R. 7-18.) "Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application." (*Id.*) "No motion for reconsideration may in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." (*Id.*)

### III. ARGUMENT

#### A. Plaintiffs' Section 10(b) Claim Is Timely.

Reconsideration of the timeliness of Plaintiffs' Section 10(b) Claim is warranted because the Court made either a manifest error of fact or manifest error of law when

it incorrectly concluded that that Plaintiffs' Section 10(b) claim was untimely. Indeed, despite accepting that "the latest possible date for discovery of these violations [of the federal securities laws] is March 9, 2019," at least four months *after* completion of the sales at issue, (ECF No. 33, at 5:19-20), and despite accepting the existence of the Tolling Agreement covering the period beginning May 1, 2020, and ending December 31, 2020, the Court concluded that the Plaintiffs' Section 10(b) claim must have been asserted no later than June 2021. (*Id.*, at 6:11-13.) This conclusion is inconsistent with and contradicted by the facts accepted by the Court. Indeed, accepting the Court's own analysis that the facts constituting the violation of Section 10(b) were discovered by Plaintiffs by March 9, 2019, due to the Tolling Agreement, the statute of limitations for Plaintiffs' Section 10(b) claim did not expire until October 9, 2021, nearly two full months *after* Plaintiffs filed their Complaint. The Court's factual error is plain and indisputable.

This is not a situation involving a debatable sequence of events. The only evidence before the Court and in the record is that Plaintiffs' transfers of funds in exchange for Hybrid Tokens occurred between approximately March 11, 2018, and October 6, 2018, and that the Hybrid Tokens were delivered in November 2018, completing the purchase. In order for the Plaintiffs' Section 10(b) claim to be untimely as of June 2021, the Court was required to find that the fraud was discoverable at or before completion of the sales at issue, i.e., at some point before November 2018. The Court's holding that a Plaintiff *taken in by a fraudulent scheme* should in fact have been "reasonably diligent" at or before the time of purchase unfairly places blame on the victim and would result in manifest injustice. The Court's holding vitiates the concepts of "reasonable diligence" and "inquiry notice" and would tend to foreclose the possibility of a later discovery. Indeed, the Court accepted that "the latest possible date for discovery" of the securities violations is March 9, 2019. (ECF No. 33, at 5:19-20.) Thus, the Court's ruling on the timeliness of Plaintiffs' Section 10(b) claim is clearly inconsistent with what it found to be the latest possible date for discovery.

6
PLAINTIFFS' MOTION TO RECONSIDER

The Court erred by accepting Defendants' reliance upon the adjective "cursory" as evidence of what a "reasonably diligent" plaintiff might have been aware of at the time of purchase. Although the Complaint noted that a "[a] cursory review of the code underpinning Hybex IO revealed that, contrary to Defendants' representations that Hybrid was designing a new, novel, and groundbreaking platform, Hybex IO was instead a so-called 'white label exchange' purchased from software company AlphaPoint," (ECF No. 1, ¶ 110), such review did not and could not reveal the full scope of the fraudulent activities alleged in the Complaint or put Plaintiffs on notice of their securities laws claims, particularly because the SEC did not advise investors that cryptocurrencies may constitute securities until April 3, 2019—nearly a full year *after* the release of Hybex IO. (ECF No. 1, ¶¶ 64, 108.) This is why establishing a timeframe for "inquiry notice" is a fact-based inquiry, and to the extent disputes exist regarding material questions of fact they are inappropriate for a motion to dismiss. *See, e.g.*, *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1288 (E.D. Wash. 2007) ("Whether Metropolitan's Annual Report for 2002 contained sufficient storm warnings to trigger inquiry notice is thus a factual question inappropriate for resolution on a motion to dismiss.").

As for the law, it is well-established that the statute of limitations for securities fraud is "2 years *after the discovery of such facts constituting the violation. . . .*" (28 U.S.C. § 1958 (emphasis added).) Claims pursuant to Section 10(b) of the Exchange Act and SEC Rule 10b-5 must be brought within "two years after the fraud has been discovered and not more than five years after the fraud has occurred." (28 U.S.C. § 1658(b); 28 U.S.C. § 2462.) "The statute of limitations for a section 10(b) claim may be tolled by fraudulent concealment in the same way that the statute for a section 12(2) claim may be tolled." *Lubin v. Sybedon Corp.*, 688 F. Supp. 1425, 1442 (S.D. Cal. 1988). The Order's myriad and inconsistent views on when the violations at issue were discovered led to manifest error in application of the law. (*See, e.g.*, ECF No. 33 at 4:20-26 ("accepting Plaintiffs' arguments" "that they could not have discovered the

[securities law] claim until the SEC Framework for cryptocurrency stated cryptocurrencies were securities in April 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(1)); *id.* at 5:19-20 (stating that "the latest possible date for discovery of these violations [of the securities laws] is March 9, 2019" for purposes of evaluating statute of limitations for claim under Section 5 and 12(a)(2)); *id.* at 6:12-13 ("[a]ccepting the completed sale argument" for purposes of evaluating statute of limitations for claim of securities fraud).).

In *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), the Supreme Court of the United States explained that "the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' ***including scienter***—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (emphasis added); *see id.* ("reject[ing] Merck's argument that, even if 'discovery' requires facts related to scienter, facts that tend to show a materially false or misleading statement (or material omission) are ordinarily sufficient to show scienter"). Even accepting, *arguendo*, Defendants' alternative timeline of events, the launch of Hybex IO did not and could not give rise to an inference of scienter, a key element of Plaintiffs' claims. Indeed, reasonable investors, like Plaintiffs, may have believed that the issues with Hybex IO revealed potential delays or other concerns with Hybrid's development schedule, no reasonable investor would have discovered Defendants' fraudulent conduct and Defendants' intention to defraud from a review of Hybex IO alone. Had the Court interpreted the facts in the light most favorable to plaintiffs, as the law requires, the Court would not have adopted Defendants' interpretation of events.

The Order, therefore, contains either a manifest error of fact or law because it is plain and undisputable that the Plaintiffs' Section 10(b) claim could not be untimely until after October 9, 2021, or almost two months *after* the Plaintiffs filed their Complaint.

### B. It Was an Abuse of Discretion to Dismiss Plaintiffs' Timely State Law Claims with Prejudice.

While the Court has broad discretion to decide whether or not to retain jurisdiction over state law claims after dismissing the federal law claims, the Court should not dismiss the state law claims with prejudice when the only grounds for dismissing them is the Court's refusal to retain subject matter jurisdiction. *See Carnegie- Mellon Univ. v. Cohill*, 484 U.S. 343, 349-50 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case *without prejudice*.").

Here, the Order states that it is dismissing the state law claims because "the Court declines to exercise supplemental jurisdiction over the state law claims under § 1367(c)(3)." (ECF No. 33, at 6:27-7:2.) The Court should have dismissed the state law claims without prejudice to pursuing those claims in state court. *Les Shockley Racing, Inc. v. Nat'l Hot Rod Ass'n*, 884 F.2d 504, 509 (9th Cir. 1989); *see also City of Oakland v. Oakland Raiders*, 445 F.Supp.3d 587, 591, 606 (N.D. Cal. 2020) (dismissing remaining state law claims "without prejudice to pursuing those claims in a court of competent jurisdiction") (citing *Carnegie-Mellon Univ*, 484 U.S. at 350.). Where, as here, the case has not progressed beyond the pleadings stage, there is "no reason to deviate from the usual approach of declining to exercise supplemental jurisdiction after all federal claims have been dismissed." *City of Oakland*, 445 F. Supp. 3d at 606.

In light of the foregoing, the Court's judgment should be revised to state that Plaintiffs' state law claims are dismissed without prejudice to pursuing those claims in state court.

///

///

///

PLAINTIFFS' MOTION TO RECONSIDER

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that the Court reconsider the Order with respect to its (i) determination that Plaintiffs' Section 10(b) claim is time-barred, and (ii) dismissal with prejudice of Plaintiffs' state law claims.

DATED: March 1, 2022                NOVIAN & NOVIAN LLP

By: */s/ Alexander Brendon Gura*
FARHAD NOVIAN
ANTHONY S. CHAVEZ
ALEXANDER BRENDON GURA

*Attorneys for Plaintiffs*